*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDDIE LEON DONAHOO,

Defendant-Appellant.

UNPUBLISHED
October 22, 2020

No. 346514
Wayne Circuit Court
LC No. 18-003840-01-FC

Before: BOONSTRA, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of second-degree murder, MCL 750.317.[1] The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 39 to 85 years' imprisonment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a stabbing that occurred in Detroit on July 2, 2017. Defendant testified at trial that he left his residence around 10:45 p.m. to "look[] for the company of a female." Chiquita Paul (Paul) testified that she and her boyfriend, John Williams (Williams), were drinking outside that evening near an abandoned building at 2930 Cass Avenue, and that defendant, whom she knew from around the neighborhood, approached her and solicited her for prostitution. Paul agreed, and the two went behind the abandoned building. Paul testified that she and defendant were still negotiating when Williams, whom Paul described as her "protector," came to look for her behind the building. Williams told Paul to leave, so she began walking toward the Temple Bar to try to find someone to call the police. Paul testified that she heard Williams and defendant arguing as she left, but could not make out what they were saying; shortly afterward, she heard a scream and recognized the voice as belonging to Williams. A few minutes later, she saw defendant return from behind the building; defendant asker her, "[D]o you still want to do that?" Paul declined and asked where Williams was. Defendant responded that he did not know and walked

---

[1] Defendant was charged with open murder, MCL 750.318.

away. Paul then went back behind the building and discovered Williams lying face down on the ground with blood "squirting out like a faucet." Williams died before emergency responders arrived at the scene.

At trial, defendant admitted that he went to an enclosure behind the building with Paul, but claimed that they were interrupted by Williams, who entered the enclosure with a box cutter in his hand. Defendant testified that he put his hand up and said, "[H]old up, hold up, hold up," but that Williams struck defendant, cutting his hand. A fight ensued, and defendant used a knife he had in his pocket to defend himself. Defendant acknowledged that he stabbed Williams several times, but insisted that he did so only because he felt that his life was in danger when Williams attacked him with the box cutter.

The prosecution played several recorded calls between defendant and his father, Eddie Sigers (Sigers), and his sister, Sakoilya Donahoo (Sakoilya), for the jury. During these calls, defendant discussed with his family members whether or not to argue self-defense at trial.

Defendant was convicted and sentenced as described. This appeal followed.

## II. REQUEST FOR NEW APPOINTED COUNSEL

Defendant argues that the trial court abused its discretion by denying his request for substitute counsel without inquiring about why defendant believed defense counsel's representation was inadequate. We disagree.

We review a trial court's ruling on a request for new counsel for abuse of discretion. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted).

"Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id.* (quotation marks and citation omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citations omitted). In contrast, "[a] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *Strickland*, 293 Mich App at 398. Good cause cannot be established on the basis of a defendant's refusal to cooperate with assigned counsel or because assigned counsel refuses to file frivolous motions. *People v Traylor*, 245 Mich App 460, 462-463; 628 NW2d 120 (2001). "When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *Strickland*, 293 Mich App at 397 (quotation marks and citation omitted).

-2-

The trial court addressed defendant's request for new counsel at the beginning of a pretrial hearing held several weeks before trial. The hearing transcript does not include defendant's request for new counsel, so it appears that the request was communicated to the trial court off the record. It is therefore unclear whether the court was aware of defendant's specific concerns before addressing his request. The transcript does reflect that the trial court acknowledged defendant's desire for a new lawyer, and that it then commented, "You have been appointed an attorney who's competent and capable to handle this case." The trial court then told defendant that he was free to hire a different lawyer, as long as the retained attorney was prepared to proceed to trial as scheduled.

The issue arose again on the first day of defendant's trial. At the beginning the proceedings, the trial court said:

> Mr. Donahoo, I received a letter that you wrote last week disparaging [defense counsel], accusing him of being derelict in his duties. I've already addressed this issue with you. I told you if you were unhappy with the services that you were receiving from [defense counsel] you were happy to—welcome to retain an attorney of your choosing as long as they were ready to go on trial date. I have no reason to believe that [defense counsel] has been anything less than thorough and effective on your behalf, but just so you know, those letters that you wrote will become a part of your file for future reference should that be necessary.[2]

Considering the deficiencies in the record, it is impossible for this Court to accurately determine whether the nature of defendant's complaints required further inquiry. But even when a trial court fails to properly address a request for substitute counsel, we will not reverse a conviction on that basis when the defendant actually received effective assistance. *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). As discussed later in this opinion, we conclude that defendant has not demonstrated that his counsel was ineffective in a manner that prejudiced defendant. Therefore, even if the trial court erred by failing to sufficiently investigate defendant's problems with his appointed counsel, that error does not require reversal. *Id*.

## III. ADMISSION OF PRIOR TESTIMONY OF UNAVAILABLE WITNESS

Defendant next argues that the trial court erred by admitting the preliminary examination testimony of a witness after determining that he was unavailable to testify at trial. We disagree.

We review evidentiary rulings for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *Id*.

---

[2] If defendant's letter was, in fact, made part of the court file, it was not transmitted to this Court with the rest of the trial court's electronic record.

Sheddrick Johnson (Johnson) testified at defendant's preliminary examination that as he was passing by an alley on the night of July 2, 2017, he saw defendant and Williams arguing. Johnson had previously given statements to the police identifying defendant from a photographic array and stating that he recalled seeing something shiny cupped in defendant's hand and that Williams was unarmed. He also described defendant as being "in the alley as a lookout." Johnson admitted on cross examination that he viewed the scene for approximately five seconds as he was walking. Johnson also stated on cross examination that by "lookout" he meant "somebody turning around and looking around" when "there was something about to take place or something had already took [sic] place."

On the second day of trial, the prosecution requested a hearing to address the fact that Johnson was not present for trial and the efforts that had been made to secure his presence. Detective Kelly Lucy described her unsuccessful efforts to serve Johnson with a subpoena and material witness detainer. The trial court directed Detective Lucy to continue looking for Johnson that evening. The next day, Detective Lucy reported on her continued efforts to locate Johnson. The trial court found that the prosecution had established due diligence in trying to locate Johnson, who had been transient throughout the pretrial proceedings. The court also noted that defense counsel had had the opportunity to cross-examine Johnson at the preliminary examination. Accordingly, the trial court ruled that Johnson was unavailable and that his preliminary examination testimony could be admitted in lieu of live testimony.

Defendant argues that the trial court erred by holding that the prosecution had shown due diligence. We disagree.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c), and is generally inadmissible unless it falls within an exception, MRE 802. One such exception is found in MRE 804(b)(1) if the witness is unavailable at trial. MRE 804(b)(1) allows admission of "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." For purposes of this exception, a trial court may deem a witness unavailable if he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5).

"The test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony not whether more stringent efforts would have procured it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992). Detective Lucy described a variety of efforts that were made to locate Johnson. She went to his last known address, attempted to call him, and called one of his relatives. She also spoke with people who knew him to inquire about places where he might be staying. She visited a gas station where Johnson was known to visit, and inquired about Johnson at restaurants, car washes, and liquor stores in the area he was known to frequent. She also asked for assistance from other law enforcement agencies that had jurisdiction over the area where Johnson had last been seen and was believed to reside. She further inquired with the morgues, jails, and state and federal benefits offices in Oakland, Wayne, and Macomb County.

Detective Lucy acknowledged anticipating as early as April 2018 that Johnson, who was more or less transient, would be difficult to locate. Johnson was given a cellular phone so that he could stay in contact with the police department, but he last communicated with the police department sometime in July about the payment of the monthly bill. Thereafter, he stopped using the phone and had no further contact with the police.

Although the trial court could have inquired further into *when* these specific efforts were undertaken, see *James*, 192 Mich App at 571 (stating that inquiry into the prosecution's diligence should consider not only the steps taken to secure the witness's presence, but also "the time at which the efforts were made"), we hold that the trial court did not abuse its discretion when it found that the prosecution had shown due diligence. Under the circumstances of this case, which involved attempting to locate a transient witness in a large metropolitan area who had discarded or ceased using the cellular phone given to him by the police, Detective Lucy's efforts were reasonable, notwithstanding that they did not result in locating Johnson. *Id*.

Additionally, a preserved, nonconstitutional error does not warrant reversal unless it affirmatively appears that the error resulted in a miscarriage of justice. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MCL 769.26. "[T]he defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *Id*., quoting *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

Even if we were to conclude that the trial court erred by admitting Johnson's preliminary examination testimony, we are not convinced that it is more probable than not that a different outcome would have resulted without the error. *Id*. Defendant argues that Johnson's testimony was not harmless because Johnson was the only witness to see defendant holding a possible weapon in his hand; but while defendant is correct in that regard, it is inconsequential because defendant admitted that he stabbed Williams with a knife.

Defendant also contends that Johnson's testimony was especially damaging because he described defendant as seemingly acting as a "lookout." Defendant argues that this characterization could have made the jury believe that defendant was waiting for the right time to strike, thereby undermining his claim of self-defense. We disagree. Johnson's testimony regarding his definition of "lookout" was brief and somewhat confusing—it is doubtful that the jury would have understood it to mean that defendant was waiting in the alley to murder Williams. Further, Johnson admitted that he had viewed the scene in question for only approximately five seconds. Moreover, defendant was charged with open murder, and the jury found him guilty of second-degree murder rather than premeditated murder. See *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008) (explaining that lapse of time, sufficient to allow the defendant to consider his or her actions, is necessary to establish premeditation and deliberation). It is therefore improbable that the jury relied in any meaningful way on this aspect of Johnson's testimony.

Further, the other evidence against defendant was strong. Defendant admitted that he stabbed Williams six times. Two of the stab wounds appeared to have been inflicted from behind on Williams's back and right thigh. Additionally, several recorded phone calls from jail were played for the jury, which were damaging to defendant's credibility. Less than three weeks before

trial, defendant told his father that defense counsel wanted to pursue a self-defense claim, and defendant's father said, "But you ain't done nothing!" Defendant responded, "Right." Later in the conversation, defendant reiterated, "I been telling them I didn't do nothing, I don't know nothing." A few days later, defendant asked for his sister's advice, saying, "Do you think I might as well just say it was self-defense? I'm not saying I did anything, but do you think with the situation I'm in now that I might as well just say that?" Defendant's sister counseled defendant to say that he did not do anything. Defendant's overall credibility was also seriously damaged by his evasiveness during cross-examination. Considering the totality of the evidence, the admission of Johnson's testimony, even if erroneous, was harmless. *Lukity*, 460 Mich at 495.

Defendant also argues that the admission of Johnson's testimony violated his constitutional right to confront the witnesses against him. Defendant did not oppose admission of Johnson's former testimony on constitutional grounds at trial, so this issue is unpreserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). We review unpreserved constitutional issues for plain error affecting substantial rights. *Thorpe*, 504 Mich at 252; *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019). "An error has affected a defendant's substantial rights when there is 'a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.' " *Walker*, 504 Mich at 276, quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006). Here, as discussed, we find no error in the trial court's determination that Johnson was unavailable, and that in any event there is no reason to believe that a different result would have been reached but for the admission of Johnson's preliminary examination testimony. Moreover, defendant had a prior opportunity to cross-examine Johnson at the preliminary examination. Defendant's confrontation clause argument accordingly fails.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

In his primary brief on appeal, defendant argues that he was denied the effective assistance of counsel because his attorney did not investigate the existence of the enclosure where Williams purportedly attacked defendant or present photographs of the area to clarify defendant's testimony. Defendant also argues that defense counsel was ineffective because he failed to rehabilitate defendant's credibility after a highly damaging cross-examination. In his Standard 4 brief,[3] defendant also argues that his trial counsel was ineffective for failing to call his family members as defense witnesses, for not sufficiently developing or emphasizing evidence that Williams had a

---

[3] A supplemental appellate brief filed by in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

"bulge" in his pocket that may have been a concealed weapon, and for failing to adequately impeach Johnson. We disagree.

Defendant did not move for a new trial or evidentiary hearing before the trial court, and this Court denied two motions to remand for an evidentiary hearing.[4] *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Accordingly, our review is limited to mistakes apparent on the record. *Id*. at 539. "Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018). "Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Head*, 323 Mich App at 539.

A defendant who claims to have been denied the effective assistance of counsel bears a heavy burden to overcome the presumption that defense counsel employed a sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish a claim of ineffective assistance, the defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51, citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Muhammad*, 326 Mich App at 63 (quotation marks and citation omitted). The defendant also bears the burden of establishing the factual basis for his or her claim. *Id*.

## 1. EVIDENCE OF ENCLOSURE

Defendant argues that his attorney did not properly investigate or present evidence to aid the jury in understanding the area where the confrontation with Williams took place. "Counsel always retains the 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Trakhtenberg*, 493 Mich at 52, quoting *Strickland*, 466 US at 690-691. When defendant testified to his attack by Williams, he had difficulty describing the physical area where the confrontation occurred, a partially-fenced-in enclosure behind an abandoned building. Defendant argues that if defense counsel had presented photographs of the enclosure, it would have been clear to the jury that he had no means of retreat and it would have aided the jury in evaluating the reasonableness of defendant's belief that the use of deadly force was necessary. Defendant supports his argument with photographs depicting an area connected to the back of the abandoned building, enclosed by brick walls and a tall chain-link fence.[5] Having reviewed all of the trial testimony and crime scene photographs, we agree that the

---

[4] *People v Donahoo*, unpublished order of the Court of Appeals, entered December 16, 2019 (Docket No. 346514); *People v Donahoo*, unpublished order of the Court of Appeals, entered February 7, 2020 (Docket No. 346514).

[5] These photographs are not part of the lower court record and are, therefore, beyond the scope of this Court's review when it comes to determining his counsel's effectiveness. *People v Morrison*, 328 Mich App 647, 655; 939 NW2d 728 (2019). However, we may consider them in the context of determining whether to remand for an evidentiary hearing on the issue of his counsel's

jury would likely have had great difficulty visualizing the environment in which the attack took place from defendant's description alone; however, we still reject defendant's claim of error.

Defense counsel's decision to forgo seeking or presenting evidence that would clarify the nature of the enclosure did not fall below an objective standard of reasonableness. A defendant's failure to retreat can be relevant to evaluating whether the use of deadly force in self-defense was reasonably necessary. *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002).[6] But,

> [A] person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon. In these circumstances, as long as he honestly and reasonably believes that it is necessary to exercise deadly force in self-defense, the actor's failure to retreat is never a consideration when determining if the necessity element of self-defense is satisfied; instead, he may stand his ground and meet force with force. [*Id*. at 119 (citations omitted).]

Defendant's testimony about Williams's attack described a "sudden, fierce, and violent attack." The issue of whether defendant had a duty to retreat was not argued at trial. Moreover, Williams's body was not discovered inside the enclosure—it was near the northeast corner of the exterior fence. If the jury believed that the fight began inside the small enclosure, it could also infer that defendant pursued Williams out of the enclosure and toward the fence line. Any suggestion that defendant chased after a fleeing opponent would undermine his subjective claim of fear and the objective reasonableness of defendant's action. Considering this risk, defense counsel could have strategically decided against focusing on the location of the altercation, reasoning that the minimal benefit of such evidence was outweighed by the negative implications that could be attached to it. We will not second-guess trial counsel with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

## 2. DEFENDANT'S CREDIBILITY

Defendant also argues that defense counsel was ineffective for failing to rehabilitate defendant's credibility after the prosecution's damaging cross-examination. We disagree. The prosecution asked defendant a number of "yes or no" questions for which defendant attempted to provide more detailed responses. The trial court admonished defendant for trying to interject addition information and eventually said, "If there's something that needs to be explained or clarified, [defense counsel] will get a chance for what's called redirect after the prosecution is done." But when the prosecution concluded its cross-examination, defense counsel declined the opportunity for redirect-examination.

---

effectiveness. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013). We may also consider expanding the record in the interests of justice. MCR 7.216(A)(4).

[6] *Riddle* was decided before the enactment of the Self-Defense Act, MCL 780.971 *et seq*., but the act did not "modify the common law of this state in existence on October 1, 2006 regarding the duty to retreat before using deadly force or force other than deadly force," MCL 780.973.

After the close of proofs, defendant asked the trial court to be allowed to place a statement on the record outside of the presence of the jury. The trial court allowed him to do so, and defendant complained about the limitations on his testimony, stating:

> I felt that—I was told that I would be given an opportunity to explain the phone calls and what I said to my family and I also wanted to explain about who had the box cutter. It doesn't just magically disappear. I was going to explain Chiquita Paul was seen walking away from the scene probably (unintelligible) box cutter. She also explained walking back to the deceased's body, so that's where the box cutter went.

Defendant also alleged that he had told defense counsel about the box cutter a few days before trial and complained that he was not allowed to explain that he stabbed Williams's arm, leg, and the soft tissue of his back in an attempt to avoid inflicting fatal injuries. Defendant also wanted to explain that he had been untruthful with his family because they wanted "to believe that I didn't do this," and he was trying to comfort them.

The trial court responded:

> Now, as a matter of trial strategy, perhaps [defense counsel] must have decided that he didn't want to redirect to further expose you to more cross examination by the prosecutor. So, you know, [defense counsel] doesn't have to explain his trial strategy to me or to anyone, but it was painfully obvious to this Court that you didn't do so well on cross examination. Okay? And so I can only assume that [defense counsel], in his learned experience chose not to redirect you because the more he questions, the more opportunity the prosecutor has to keep you on the stand and maybe he decided it was in your best interest to just get you off the stand as quickly as possible because the more you explain, or try to explain every little piece of evidence away, the more guilty you make yourself look. I mean, I'm just assuming. But, you know, [defense counsel] doesn't have to explain his trial strategy[.]
>
> * * *
>
> And as a trial lawyer, and I'm not one anymore but I used to be one. You know, you learn things, and you learn from experience a lot of things and you have experience speaking to jurors after they reach verdicts and talk to them about their impressions of things. And sometimes one of the things that jurors say is he had a [sic] answer for everything. Every question you ask he had a [sic] explanation for everything and he was trying so hard it made it so obvious that he was lying. And so perhaps as a matter of trial strategy [defense counsel] chose not to go into those area, but that's you know, he's the expert in defense here and so he has to—he does what he thinks is best for you. You might not like it or agree with it, but that's what he did.

The trial court also reasoned that defense counsel would not have wanted defendant to explain that he was trying to avoid fatally wounding Williams because defense counsel would then be unable

to argue that defendant was entirely acting out of fear for his own life. With respect to defendant's explanation about trying to comfort his family, the trial court pointed out that the prosecution could have turned the explanation against defendant by arguing that defendant lied to his family to make them think better of him and was likely lying to the jury for the same reason.

We agree with the trial court that defense counsel's decision not to subject defendant to the risk of further cross-examination was sound trial strategy. Defendant's testimony appeared to damage his credibility more the longer he was on the stand, and his trial counsel was not unreasonable for not eliciting testimony from defendant that he would lie to family members to prevent them from thinking poorly of him or that he was able to carefully choose the parts of Williams's body to stab; such testimony was far more likely to hinder than help defendant's case. Defendant has not overcome the presumption that defense counsel's performance was the product of sound trial strategy. *Trakhtenberg*, 493 Mich at 52.

Furthermore, defendant has not demonstrated a reasonable probability that defense counsel's decision regarding which testimony to elicit from defendant affected the outcome of the proceedings. Defendant argues that the lack of redirect examination left the jury without a reasonable explanation about why defendant would tell his family he was not involved in Williams's death. Defendant's position lacks merit. First of all, it is far from clear that defendant's explanation would have changed how the jury viewed his dishonesty with family members. Moreover, his dishonesty about the events surrounding Williams's death extended beyond his conversations with his family—he also denied involvement when he was arrested. Regardless of his reasons for doing so, defendant's credibility was necessarily damaged by his history of lying.

Moreover, in closing arguments, defense counsel urged the jury to consider the content and timing of the conversations carefully. More specifically, he noted that defendant spoke about acting in self-defense in the very first call.[7] It was not until defendant's father repeatedly insisted that defendant should deny any involvement that defendant agreed he did not do or know anything. Moreover, defendant hedged many of his denials in terms of criminal responsibility, saying things like, "It wasn't no murder one," and "I didn't kill no innocent man." Defense counsel argued that by carefully wording his statements, defendant was "still actually saying what happened in his own way." Defense counsel's argument was supported by the sequence of the recordings and gave the jury an alternative way to view the phone calls. Thus, it is improbable that the jury would have found defendant more credible or reached a different result had he been able to explain why he lied to his family.

### 3. DEFENSE WITNESSES

Defendant also argues that defense counsel was ineffective in failing to call defendant's father or sister as witnesses for the defense. We disagree.

---

[7] In May 2018, defendant left a message for his sister, asking her about hiring an investigator to take pictures of the crime scene to support defendant's claim of self-defense. He spoke with her directly later the same day, again discussing his request for someone to take pictures of the enclosure. Defendant emphasized that the pictures were "critical" to the issue of self-defense.

-10-

Defendant argues that his trial counsel's failure to call certain defense witnesses was the sort of complete denial of counsel described in *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). When an ineffective-assistance claim falls within one of the rare situations described in *Cronic*, 466 US at 658-660, an attorney's performance is so deficient that prejudice is presumed. *People Kammeraad*, 307 Mich App 98, 125; 858 NW2d 490 (2014). Among other situations, prejudice is presumed "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*., quoting *Cronic*, 466 US at 659 (quotation marks omitted). But in order to invoke the *Cronic* standard, "the attorney's failure must be complete." *Bell v Cone*, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002).

Defendant's reliance on *Cronic* is misplaced, because his argument regarding Sigers and Sakoilya does not involve a *complete* failure to challenge the prosecution's case. Defense counsel effectively cross-examined Paul, drawing attention to discrepancies in her various statements and questioning whether her alcohol consumption on the day of Williams's death impaired her perception or memory. During the medical examiner's testimony, defense counsel spent considerable time exploring the high level of cocaine and cocaine metabolites in Williams's system in an effort to demonstrate that Williams was likely in an agitated and aggressive state of mind when he confronted defendant. Additionally, defense counsel elicited the medical examiner's concession that the wounds on Williams's arms were not classic defensive wounds and could have been sustained in an aggressive posture. Defense counsel was knowledgeable about the facts of the case and well-prepared to present a self-defense theory. Because defense counsel clearly subjected the prosecution's case to meaningful adversarial testing, defendant's claim under *Cronic* fails. *Id*.

Defendant also argues that his counsel's conduct was deficient under *Strickland*. We disagree. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). This Court will not second-guess strategic matters or assess the wisdom of defense counsel's strategy with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "[A] claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that '(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.' " *People v Jurewicz*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 160318), quoting *Trakhtenberg*, 493 Mich at 51.

Defendant argues that defense counsel should have called Sigers and Sakoilya as witnesses so they could testify that defendant did, in fact, tell them that he killed Williams in self-defense, rather than allowing the jury to draw conclusions from the jail call recordings alone. Defendant also alleges that Sigers had photographs of the enclosure behind the abandoned building that could have been presented but for defense counsel's refusal to call Sigers as a witness or return his phone calls. Defendant supports his position with affidavits from both Sigers and Sakoilya.

Defense counsel's decision not to call Sigers and Sakoilya did not fall below an objective standard of reasonableness, and was not prejudicial. *Jurewicz*, ___ Mich at ___. With regard to the jail calls, defense counsel explained in closing argument that defendant referred to his self-defense claim in his first conversation with Sakoilya and only changed his story in later

-11-

conversations to appease his family. Defense counsel was able to offer the jury a reasonable, nonincriminating interpretation of the recorded phone calls, and he did so by relying solely on the sequence of the phone calls and defendant's precise statements during those calls. Accordingly, there was no need for Sigers and Sakoilya to clarify what defendant had divulged to them apart from the phone calls, and defense counsel's decision to focus on other aspects of the case was reasonable. Further, as discussed previously, defense counsel could reasonably have decided there was little or no strategic benefit to presenting photographs of the small enclosure when defendant's duty to retreat was not at issue.

Defendant has also failed to demonstrate that he was prejudiced by defense counsel's decisions. Considering their relation to defendant, any testimony from Sigers or Sakoilya would necessarily have been open to claims of bias. This is particularly true here because the jury heard both family members urge defendant to deny any involvement in Williams's death. If either Sigers or Sakoilya testified that defendant disclosed killing Williams in self-defense, the prosecution could point out that they therefore urged defendant to lie and to deny any involvement. At the least, the credibility of these witnesses would have been suspect. Accordingly, defendant has not shown a reasonable probability that the outcome would have been different if defense counsel had called Sigers and Sakoilya as witnesses. *Id*.

Defendant also complains that defense counsel misled Sigers and Sakoilya about the seriousness of the penalty that defendant faced and the date on which he would be sentenced, resulting in them not attending or speaking at his sentencing. Defendant has not established the factual basis for this claim; further, he cannot demonstrate that his sentencing was prejudiced because of this alleged conduct. A defendant's family members have no right to speak or present evidence at sentencing. Under MCR 6.425(E)(1)(c), the trial court must "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]" There is no similar right afforded to a defendant's family members.

### 4. EVIDENCE OF POSSIBLE CONCEALED WEAPON

Defendant also argues that defense counsel did not sufficiently develop evidence or emphasize that Williams had a "bulge" in the front pocket of his hooded sweatshirt that defendant could have believed was a concealed weapon. We disagree. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *Horn*, 279 Mich App at 39 (citations omitted).

A forensic technician testified that he observed a bag containing two sandwiches and various other snacks near Williams's body while processing the scene for evidence. However, the witness was unsure whether the bag was discovered in Williams's pocket and could only confirm that he photographed the bag where he found it upon arriving at the scene. Defense counsel questioned the first responding police officer about the matter, and the officer testified that Williams's body was turned over by medics to determine whether he could be saved. The officer said that Williams was found with food in his pocket, although he could not remember in which pocket it was located. No one specifically testified that Williams had stored the bag in the front pocket of his sweatshirt.

Defendant's argument ignores his own testimony. When defendant took the witness stand, he testified that Williams had entered the enclosure with a box cutter in his hand, and that the box cutter made defendant believe that Williams would attack him; defendant further testified that Williams had in fact attacked him with a box cutter. Considering defendant's testimony that Williams had attacked him with an actual, unconcealed weapon, defendant cannot overcome the presumption that defense counsel acted reasonably by failing to pursue the theory that defendant may have believed that Williams had a concealed weapon. Moreover, defendant was asked by his counsel if anything about Williams's appearance and demeanor made defendant afraid that he would be attacked. If defendant had indeed believed that Williams possessed a concealed weapon in his front pocket, he could have said so at the time. Defendant has not overcome the presumption of trial strategy. *Id*.

5. IMPEACHMENT OF JOHNSON

Defendant also argues that his counsel was ineffective for failing to adequately impeach Johnson. We disagree.

Again, decisions regarding how to question a witness are generally presumed to be matters of trial strategy that this Court will not second-guess with the benefit of hindsight. *Horn*, 279 Mich App at 39. Defendant points out a number of what he characterizes as inconsistencies between Johnson's preliminary examination testimony and earlier statements Johnson made to the police. Johnson's written statements to the police were not admitted at trial.

Defendant cannot overcome the presumption that defense counsel's decision not to raise every inconsistency in Johnson's preliminary examination testimony involved objectively reasonable strategy.

Defense counsel argued at trial that Johnson's testimony at the preliminary examination actually supported defendant's version of events. Johnson confirmed that he only observed the argument between defendant and Williams for approximately five seconds. Relying on this evidence, defense counsel argued in his closing argument that Johnson, having seen the altercation in the dark for only a few short seconds, mistook Williams and defendant for one another. He pointed out that Johnson claimed that defendant was wearing a red, white, and blue shirt, which actually described Williams's shirt, as seen in the crime scene photographs. Defense counsel theorized that it made more sense for Paul's "protector" to be acting as a lookout while Paul and defendant went to consummate their agreement. Therefore, defense counsel theorized, the person Johnson saw surreptitiously holding a weapon could actually have been Williams, rather than defendant. Defense counsel also emphasized that Paul and Johnson had a longstanding relationship and spoke with each other after the incident, implying that Johnson may have had an ulterior motive for incriminating defendant, rather than Williams.

Considering defense counsel's use of Johnson's testimony in closing argument, it was important that Johnson appeared credible as a general matter. By refraining from impeaching Johnson about every inconsistency between his testimony and earlier statements, defense counsel was able to argue that Johnson's recollection was largely accurate, with the exception of his mistaken (or deliberate) misidentification of defendant as the person holding a weapon at the beginning of the argument. If the jury had found defense counsel's characterization of Johnson's

testimony persuasive, it would have supported defendant's contention that he acted in self-defense only after Williams confronted him with a box cutter. Because defendant has not overcome the presumption that defense counsel's performance constituted reasonable trial strategy, he has not demonstrated that he was denied the effective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-52; *Horn*, 279 Mich App at 39.

Defendant also argues that defense counsel's performance was deficient when he failed to inform the jury that Johnson testified at the preliminary examination only after being "threatened" with jail and a $1,000 personal bond. We disagree.

Johnson failed to appear at the first day of defendant's preliminary examination despite the fact that a material witness detainer had been issued. On the second day of defendant's three-day preliminary examination, Johnson was at the 36th District Court for an unrelated matter, and was brought before the judge presiding over defendant's preliminary examination for a show cause hearing concerning his failure to appear. The judge told Johnson that he would have to appear at the third day of the preliminary examination hearing and said, "I know you don't want me to put you in jail." The judge also set a $1,000 personal bond to ensure Johnson's appearance.

To the extent that defendant takes issue with the district court's methods of enforcing the material witness detainer, his position lacks merit because the district court was authorized by statute to order a personal bond or commitment to jail to secure Johnson's presence at the preliminary examination. MCL 767.35. Moreover, again, defense counsel had an interest in Johnson appearing generally credible. If defense counsel had drawn the jury's attention to the district court's methods for compelling Johnson's appearance at the preliminary examination, it might have negatively affected the jury's view of Johnson's credibility. Defendant has not demonstrated ineffective assistance of counsel because he again failed to overcome the presumption that defense counsel's decision regarding this matter was consistent with an objectively reasonable trial strategy. *Trakhtenberg*, 493 Mich at 51-52. Moreover, even if defense counsel's decision not to raise the issue of the bond was objectively unreasonable, defendant has not demonstrated a reasonable probability that the outcome of the proceedings would have been different if the issue had been raised. It is general knowledge that witnesses may be subpoenaed or otherwise ordered to appear by a court, and may face consequences if they do not appear; it is doubtful that repeating this fact to the jury would have altered its perceptions of Johnson's testimony.

V. SENTENCING/INEFFECTIVE ASSISTANCE

Defendant also argues that his sentence was unreasonable and disproportionate, because it was based on the sentencing judge's personal policy of imposing top-of-the-guidelines sentences whenever a defendant is convicted at trial, as opposed to entering a plea. Defendant cites two previous cases in which this Court held that the sentencing judge's practice improperly penalized a defendant for exercising constitutional rights and failed to comply with individualized sentencing requirements. Defendant alternatively argues that he was denied the effective assistance of counsel when his attorney did not object to defendant's sentence or even request a lesser punishment. We disagree.

-14-

To preserve a claim of constitutional error, the defendant must object at sentencing on the same ground pursued on appeal. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) (finding that Sixth Amendment issue was not preserved when the defendant did not raise the constitutional objection at sentencing). Defendant did not object to his sentence on the ground that the sentencing judge applied a policy that punished him for exercising constitutional rights; this issue is therefore unpreserved. With regard to his claim of ineffective assistance of counsel, as discussed earlier in this opinion, our review is limited to mistakes apparent on the record. *Head*, 323 Mich App at 538-539.

We generally review the reasonableness of a sentence for an abuse of discretion. *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019); *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). Unpreserved issues, however, are reviewed for plain error affecting substantial rights. *Lockridge*, 498 Mich at 392.

"Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law." *Muhammad*, 326 Mich App at 63. "Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Head*, 323 Mich App at 539.

We are "required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). When the defendant's sentence does not depart from the sentencing guidelines, it must be affirmed unless the guidelines were erroneously scored or the trial court relied on inaccurate information. *Id*. Because defendant acknowledges that his sentence is within the properly scored guidelines range and he does not claim that the trial court relied on inaccurate information, review of his sentence for reasonableness is arguably precluded under *Anderson*. However, *Anderson*'s conclusion that a sentence must be affirmed in the absence of the specified forms of error is derived from MCL 769.34(10), see *id*. at 636 n 34, and the limitations imposed by that statute cannot insulate a sentence from review when the claimed error has constitutional implications, *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

As defendant points out, this Court has twice acknowledged the sentencing judge's " 'practice' of sentencing defendants 'to the top of [their] guidelines' following a jury trial," and concluded that the practice effectively punishes those defendants for exercising fundamental constitutional rights. *People v Pennington*, 323 Mich App 452, 466; 917 NW2d 720 (2018), quoting *People v Smith*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2016 (Docket No. 328477), p 6.[8] In the more recent of these cases, this Court explained:

> [A] policy of sentencing all defendants who go to trial to the top of the sentencing guidelines range is fundamentally inconsistent with the principle of individualized sentences.

---

[8] Unpublished opinions are not precedentially binding under MCR 7.215(C)(J). *People v Baham*, 321 Mich App 228, 248 n 8; 909 NW2d 836 (2017). We cite *Smith* only because it involved the same sentencing judge and policy challenged by defendant.

The judge's policy also runs afoul of the principle that "[a] court cannot base its sentence even in part on a defendant's refusal to admit guilt." The right to trial by jury in a criminal felony prosecution is among the most fundamental rights provided by our judicial system. Moreover, "[i]t is a violation of due process to punish a person for asserting a protected statutory or constitutional right."

* * *

Courts, including the United States Supreme Court, have sometimes struggled to articulate the precise line between rewarding a defendant for pleading guilty, which is routine in plea bargains, and punishing a defendant for asserting his constitutional right to trial.

In this case, however, we need not resolve any tension between these principles. Here, the judge's sentencing policy was to impose the maximum recommended guidelines sentence when a defendant was convicted after going to trial. This does not demonstrate a process by which a court determines what an individualized sentence should be and then reduces it as an inducement or reward for a plea. Rather, it is the automatic imposition of the maximum guidelines sentence—a policy that ignores the requirement of individualized sentencing and promises not a degree of mercy as reward for a plea, but instead a harsh sentence as punishment for seeking a trial. Thus, while an admission of guilt may be considered indicative of remorse and may be grounds to reduce the punishment that would otherwise be imposed, there is no doubt that sentencing defendants to the top of the guidelines because they went to trial, or increasing their sentence in any way for doing so, is a violation of both due process and our law governing sentencing. [*Pennington*, 323 Mich App at 466-469 (citations and footnote omitted; second and third alterations in original).]

While the foregoing rationale is no less applicable now than it was when *Pennington* was decided two years ago, we do not construe this Court's opinion in *Pennington* as a wholesale attack on every sentence imposed by this judge, nor does it compel resentencing whenever the same judge sentences a defendant at the top of the applicable guidelines range. Defendant was sentenced on September 18, 2018, after this Court's opinions in *Pennington* and *Smith* alerted the sentencing judge to the flaws of her policy. Although the judge did not clearly articulate why the sentence she chose in this case was proportionate to defendant and the offense he committed, neither did she make any comments suggesting she was still employing the sentencing practice that was deemed improper in *Pennington* and *Smith*. Absent evidence to the contrary, "[a] sentence within the guidelines range is presumptively proportionate[.]" *Powell*, 278 Mich App at 323. Defendant's case is distinguishable from *Pennington* and *Smith* because there is no record evidence to rebut this presumption.

Defendant also contends that the trial court's sentence was punishment for exercising his right to testify at trial. We find no support for that claim in the record. Defendant devoted much of his allocution at sentencing to reiterating complaints about counsel, detailing what he perceived as inconsistencies in the prosecution's case, and summarizing his right to employ self-defense when faced with a sudden, fierce attack. After patiently listening to defendant's allocution, the

-16-

judge explained her own view of the trial and opined that defendant's decision to testify against counsel's advice had been detrimental to his case because his testimony came off as disingenuous. We do not construe these comments as suggesting that the judge was punishing defendant for testifying. Rather, she was responding to his complaints about the trial and trying to impress upon him that he "didn't do [himself] any services by taking the stand and not being honest and forthright." Because defendant has not demonstrated that his sentence was imposed in violation of his constitutional rights, and he does not claim that the it was the product of erroneous scoring or incorrect information, he is not entitled to resentencing. *Anderson*, 322 Mich App at 636.

Defendant alternatively argues that he was denied the effective assistance of counsel because his attorney did not object to the reasonableness of defendant's sentence or advocate for a lesser punishment despite the sentencing judge's reputation for relying on an improper sentencing policy. A criminal defendant has the right to effective assistance of counsel at all critical stages of the proceedings, including sentencing. *People v Pubrat*, 451 Mich 589, 593-594; 548 NW2d 595 (1996). Defense counsel did not object to defendant's sentence or ask the trial whether the sentence was the result of a continued application of the policy found objectionable in *Smith* and *Pennington*; arguably, this conduct fell below an objective standard of reasonableness when combined with the fact that defense counsel did not even advocate for a lower sentence. *Trakhtenberg*, 493 Mich at 51.

Even if such conduct was below an objective standard of reasonableness, however, defendant has not shown that he was prejudiced by his counsel's performance. *Id*. Defendant does not point out any error in the scoring of his sentencing guidelines or inaccuracy in the information before the court. Defendant was given a full opportunity for allocution, during which he continued to maintain that his actions were justified on the basis of self-defense. The prosecution and a member of Williams's family urged the court to impose the maximum sentence provided by the sentencing guidelines. In light of the circumstances, there is not a reasonable probability that the court would have imposed a different sentence but for counsel's failure to request a lower sentence.

## VI. REMAINING STANDARD 4 BRIEF ISSUES

Defendant also raises two additional issues in his Standard 4 brief, both of which lack merit.

### A. ATTORNEY GRIEVANCE COMMISSION COMPLAINT (AGC)

Defendant filed a grievance against his counsel with the AGC. Defendant argues that defense counsel lied to a member of the AGC about his investigation of the crime scene and statements he purportedly attributed to Sigers. This issue is not preserved for appellate review because defendant did not raise it before the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). More importantly, defense counsel's representations to the AGC, made after defendant's conviction, are simply not within the scope of this criminal appeal, and we decline to consider defendant's argument further.

### B. JUDICIAL MISCONDUCT

Lastly, defendant argues that the trial court erred by making findings of fact at sentencing. We disagree.

Defendant did not preserve this issue for review by raising it below. *Metamora Water Serv*, 276 Mich App at 382. We review unpreserved issues for plain error affecting the defendant's substantial rights. *Thorpe*, 504 Mich at 252.

Defendant takes issue with the trial court's opinion of his credibility during trial. Defendant's complaint appears to stem from his exchange with the trial court at sentencing. As noted earlier, defendant identified what he perceived as inconsistencies in the prosecution's case and maintained that his use of self-defense was justified. The court's response to defendant's allocution included the following remarks:

> I don't think we'll really ever know what happened back behind that building. I don't know if you went back there armed with that knife because you intended to do harm to the woman whose services you had engaged. I don't know if you had that knife on you just because you were in a [sic] area that can be somewhat dangerous. I don't know if, you know, he was, in fact, armed with a box cutter and attacked you. You know, I don't know, but what I do know is that you didn't do yourself any services by taking the stand and not being honest and forthright. And the reason I say you were not honest and forthright is because of the myriad of inconsistencies that the prosecutor skillfully was able to draw out in your testimony.

We see no evidence in the trial court's statement that it was making findings of fact that were more properly made by the jury. See *Aldrich*, 246 Mich App at 124 (discussing jury's role as fact-finder). Nor does the record show that the trial court based its sentence on any improperly found facts. Defendant has failed to demonstrate any error, plain or otherwise.

Finally, defendant's statement of the question presented also suggests that he faults the trial court for not issuing subpoenas to witnesses to appear at his sentencing. But sentencing was not the time for defendant to call witnesses or present further evidence in support of his self-defense claim. In addition, under MCR 6.425(E)(1)(c), the trial court must give "the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]" Defendant has cited no authority that requires the trial court to extend a similar right to speak at sentencing to a defendant's witnesses. Defendant has not established plain error affecting his substantial rights.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood