PEOPLE v WALKER (ON REMAND)

Docket No. 250006. Submitted October 16, 2006, at Lansing. Decided
    November 21, 2006, at 9:05 a.m. Leave to appeal denied, 477 Mich
    1087.

Alvin C. Walker, Jr., was convicted by a jury in the Oakland Circuit
    Court of felonious assault, possession of a firearm by a felon, and
    two counts of possessing a firearm during the commission of a
    felony following a domestic assault against his girlfriend. The
    victim did not appear at trial. Pursuant to a pretrial motion,
    however, the court, Colleen A. O'Brien, J., admitted the victim's
    statements to a neighbor, including a handwritten transcription
    the neighbor made of some of those statements, under MRE 803(2)
    as excited utterances. The victim's statements to the police and
    the neighbor and the victim's statements to a 911 operator were
    also admitted. The defendant appealed. The Court of Appeals,
    NEFF, P.J., and R.S. GRIBBS, J. (COOPER, J., dissenting), affirmed. The
    Court of Appeals concluded that the trial court did not abuse its
    discretion by admitting the victim's statement as excited utter-
    ances, that the defendant was not denied a fair trial by prosecu-
    torial misconduct, and that the defendant was not denied effective
    assistance of counsel. Furthermore, the Court of Appeals con-
    cluded that the victim's statements were not testimonial hearsay
    barred by *Crawford v Washington*, 541 US 36 (2004). 265 Mich
    App 530 (2005). The defendant sought leave to appeal. The
    Michigan Supreme Court initially granted leave to appeal, 472
    Mich 928 (2005), but subsequently ordered that this case be held in
    abeyance. After the decision in *Davis v Washington*, ___ US ___;
    126 S Ct 2266 (2006), the Michigan Supreme Court remanded this
    case to the Court of Appeals for reconsideration of the defendant's
    Sixth Amendment Confrontation Clause issue in light of *Davis*.
    477 Mich 856 (2006).

On remand, the Court of Appeals *held*:

1. The trial court did not err by admitting the 911-call evi-
dence. The Confrontation Clause of the Sixth Amendment bars the
admission of testimonial statements of a witness who does not
appear at trial unless the witness is unavailable to testify and the
defendant had a prior opportunity to cross-examine the witness.
Under *Davis*, statements are nontestimonial when made in the

course of police interrogation in circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. While the questioning in a 911 call can evolve into eliciting testimonial statements, the 911 call in this case was a call for help, and the statements elicited were necessary to resolve the present emergency, rather than to learn what had happened in the past to establish evidence of a crime.

2. The victim's statement recorded in writing by her neighbor and the victim's statements to the police at the scene were inadmissible. Under *Davis*, statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. While the victim in this case was still visibly upset when the police questioned her, the questioning at that point was investigatory in nature. Her statements recounted how potentially criminal past events began and progressed. While portions of these statements could be viewed as necessary for the police to assess the emergency, and thus nontestimonial in nature, such statements are generally testimonial under the *Davis* standards because the primary purpose of the interrogation is to investigate a possible crime.

3. While the defendant failed to preserve his Confrontation Clause claim, the trial court's error in admitting the statements was not harmless under the standard for unpreserved constitutional error because it was outcome determinative. Absent those statements, evidence of the defendant's beating the victim with sticks or threatening her with a gun was lacking to support the offenses charged. The error seriously affected the fairness of the judicial proceedings and requires reversal of the defendant's convictions. Because of the limited record, however, the case is remanded for the trial court to determine whether the defendant is properly subject to a charge of any alternative or lesser-included offense that the prosecution may pursue on the basis of the admissible evidence and the proceedings of record.

Reversed and remanded.

COOPER, J., concurring, agreed with the majority's conclusion and its analysis of *Davis*, but disagreed with its application of a harmless-error analysis. Under *Crawford*, it appears that Confrontation Clause claims may be automatically preserved and that the harmless-error review conducted under United States Supreme Court precedent for trial error would thus be inappropriate. Neither *Crawford* nor *Davis* directly addressed the applicable

standard of review, however, and the United States Supreme Court
should address that issue further. Nevertheless, the error was not
harmless under any analysis.

EVIDENCE — HEARSAY — CRIMINAL LAW — WITNESSES — TESTIMONIAL AND
NONTESTIMONIAL STATEMENTS — 911 CALLS.

The Confrontation Clause of the Sixth Amendment bars the admis-
sion of testimonial statements of a witness who does not appear at
trial unless the witness is unavailable to testify and the defendant
had a prior opportunity to cross-examine the witness; statements
are nontestimonial when made in the course of police interroga-
tion under circumstances objectively indicating that the primary
purpose of the interrogation is to enable police assistance to meet
an ongoing emergency; statements are testimonial when the
circumstances objectively indicate that there is no ongoing emer-
gency and that the primary purpose of the interrogation is to
establish or prove past events potentially relevant to later criminal
prosecution; while the questioning in a 911 call can evolve into
eliciting testimonial statements, a 911 call is ordinarily designed
primarily to describe current circumstances requiring police assis-
tance rather than to establish or prove past facts, and the
statements made are generally nontestimonial in nature (US
Const, Am VI).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *David G. Gorcyca*, Prosecuting Attor-
ney, *Joyce F. Todd*, Appellate Division Chief, and *Kath-
ryn G. Barnes*, Assistant Prosecuting Attorney, for the
people.

*Michael J. McCarthy, P.C.* (by *Michael J. McCarthy*),
for the defendant.

ON REMAND

Before: NEFF, P.J., and OWENS and COOPER, JJ.

NEFF, P.J. This case is before us on remand from the
Michigan Supreme Court for reconsideration of defen-
dant's Confrontation Clause claim in light of *Davis v
Washington*, ___ US ___; 126 S Ct 2266; 165 L Ed 2d 224

(2006). See 477 Mich 856 (2006). We conclude that the standards announced in *Davis* render the written statement of the victim's account of the alleged felonious assault, and her statements in response to questioning by police officers at a neighbor's home, testimonial and, therefore, inadmissible absent an opportunity for cross-examination by defendant. However, the statements made in the 911 call are nontestimonial in character, and, therefore, no error occurred in the trial court's admission of the 911-call evidence. Given the record before us, and the fact that this case was tried before either *Davis* or *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), was decided, we reverse defendant's convictions and remand this case to the trial court for further proceedings, including consideration of amended charges and sentencing, if appropriate.

### I. FACTS

The underlying facts of this case were set forth in our earlier opinion as follows:[1]

> This case stems from a domestic assault in which defendant beat his live-in girlfriend repeatedly with a stick and threatened her with a gun. The couple had been living together for several years and had a son together. The victim told police that after the couple had an argument on the evening of October 18, 2002, defendant forced her to lie on the bed on her stomach while he beat her with white sticks on her back, buttocks, legs, and arms. He then pointed a handgun at her and told her he would "blow her back out" if she moved. The beatings continued until early the next morning. The victim escaped at approximately

---

[1] The facts are repeated for purposes of our discussion of the issue on remand. We express no opinion with regard to the admissibility of particular factual evidence.

9:00 a.m. by jumping from a second-story balcony while defendant was sleeping. She ran to the home of a neighbor, who called 911.

The police arrived within a few minutes. Because the victim was upset, the neighbor wrote out her statement of what happened. The victim accompanied the police to the couple's home, where the police found three white sticks and a handgun. Defendant was not at the home, but was located and arrested a short while later. [*People v Walker*, 265 Mich App 530, 532; 697 NW2d 159 (2005).]

## II. ISSUE

At issue on remand is the admissibility of hearsay statements, including statements made during the 911 call, the victim's statement recorded in writing by the neighbor, and the victim's statements to the police.[2] The trial court determined that the statements were admissible under MRE 803(2) as excited utterances, and, in our earlier opinion, we agreed. However, we must now decide whether the statements are objectively characterized as testimonial under the standards articulated in *Davis* and, therefore, inadmissible under the Confrontation Clause. Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis, supra* at 2273. "It is the testimonial character of [a] statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.*

## III. ANALYSIS

The Confrontation Clause of the Sixth Amendment bars the admission of "testimonial" statements of a witness who did not appear at trial, unless the witness

---

[2] The victim was not present at the trial.

was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford, supra* at 59, 68. In *Crawford*, the Court concluded that a recorded statement, given in response to structured police questioning after the declarant was in custody and had received *Miranda*[3] warnings, was *clearly* an inadmissible "testimonial" statement made during a police "interrogation." *Id.* at 53 n 4, 61. The Court however declined to "spell out a comprehensive definition" of testimonial hearsay for purposes of the Confrontation Clause. *Id.* at 68.

The Court in *Davis*, and the companion case of *Hammon v Indiana*, has since further defined the demarcation between "testimonial" and "nontestimonial" hearsay in evaluating statements made to law enforcement personnel during a 911 call or at a crime scene:

> Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. [*Davis, supra* at 2273-2274.]

Like this case, *Davis* involved the admission of a recording of a 911 call in which the caller, Michelle McCottry, indicated that she had been assaulted by her

---

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

former boyfriend, Davis, who had just fled the scene. *Davis, supra* at 2270-2271. The Court held that Mc-Cottry's 911-call statements identifying Davis as her assailant were not testimonial. *Id.* at 2277. However, in *Hammon*, the Court held that statements made to police officers who responded to a domestic disturbance at the home of Hershel and Amy Hammon were testimonial and, therefore, inadmissible. *Id.* at 2272, 2278-2279. In *Hammon*, when the police arrived at the Hammon home, Amy was sitting on the front porch, and, although she appeared frightened, she told the police that " ' "nothing was the matter." ' " *Id.* at 2272 (citation omitted). The police entered the home and subsequently questioned Hershel and Amy in separate rooms. Amy recounted details of Hershel's assault, and an officer had her complete and sign a battery affidavit. Amy's statements to the police and her affidavit were admitted as evidence against Hershel when Amy failed to appear for trial. *Id.* at 2272-2273. However, the *Davis* Court found Amy's statements and affidavit violative of the defendant's rights under the Confrontation Clause and therefore inadmissible. *Id.* at 2278-2279.

In this case, as the Court did in *Davis*, we must address the admissibility of hearsay statements occurring in various contexts, including statements made during a 911 call, the victim's statement recorded in writing by the neighbor, and her statements to the police. As noted in our earlier opinion, defendant challenged the statements generally and did not distinguish between the victim's oral statements to her neighbor, her statement recorded in writing by the neighbor, and her statements to the police. *Walker, supra* at 536 n 3. Nonetheless, for purposes of analysis under the standards set forth in *Davis*, the statements in these contexts must be distinguished and analyzed accordingly.

## A. 911 CALL

Police interrogations, such as that at issue in *Crawford*, "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," fall squarely within the class of testimonial hearsay subject to the Confrontation Clause. *Davis, supra* at 2276. "A 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.*

In this case, as in *Davis*, the 911 call, objectively considered, was a call for help, such that the statements elicited were necessary to resolve the present emergency, rather than learn what had happened in the past to establish evidence of a crime. *Id.* 2276-2277. The victim appeared at her neighbor's home, crying and shaking and seeking help in response to an alleged beating. She had reportedly escaped from defendant by jumping from a second-story balcony. The 911 call made by the neighbor was a call for help, as indicated at the outset of the call:

> [*Operator*]: Farmington Hills Police, Halsted. Hello?
>
> [*Neighbor*]: Um, hi. I have—Come in here Dorothy and sit down. A neighbor just came down to my house and she can't go back home she says she's been beaten up and she can't even remember her address right now and I'm looking it up in my directory. We live on Muer Cove at Thirteen and Drake.
>
> [*Operator*]: Is she all right? Does she need medical help?
>
> [*Neighbor*]: You think you need medical help right now? She's really bruised up and she's really upset and shaking. I don't think she needs—Do you feel like you need to go to the hospital? She says she has to leave and she can't go home.

The subsequent questioning during the 911 call was directed at eliciting further information to resolve the present emergency and to ensure that the victim, the neighbor, and others potentially at risk, including the victim's eight-year-old son, would be protected from harm while police assistance was secured. The emergency operator sought details about the assault, including the location of the neighbor's home, the circumstances of the reported beating, the perpetrator's relationship to the victim, his name, and where he was, and where the child was. The operator attempted to calm the victim and the neighbor and reassure them that the police would be responding right away. As in *Davis*, the circumstances of the 911 operator's questioning "objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." *Davis, supra* at 2277.

Although in *Davis* the Court recognized that the questioning in a 911 call could evolve into eliciting testimonial statements and that unduly prejudicial portions of otherwise admissible evidence should be redacted by the trial court, *id.*, defendant raised no such argument in this case. On the record before us, we find no error in the admission of the 911-call evidence.

### B. WRITTEN STATEMENT AND STATEMENTS TO POLICE

Unlike those in the 911 call, the victim's statement recorded in writing by her neighbor and the victim's statements to the police at the scene are more akin to the statements in *Hammon*, which the *Davis* Court found inadmissible under the Confrontation Clause. In response to the 911 call, the police arrived at the neighbor's home. Although the victim was still visibly upset, we are constrained to conclude that the police questioning at this point was investigatory in nature.

As in *Hammon*, in which the police questioned the domestic assault victim separately from her husband and obtained her signed affidavit of the circumstances of the assault, the police questioning in this case first occurred in the neighbor's home, and there is no indication of a continuing danger. Rather, the victim's statement recorded by the neighbor and the victim's oral statements to the police recounted how potentially criminal past events began and progressed. *Davis, supra* at 2278. Although portions of these statements could be viewed as necessary for the police to assess the present emergency, and, thus, nontestimonial in character,[4] we conclude that, on the record before us, these statements are generally testimonial under the standards set forth in *Davis*.[5] "Objectively viewed, the primary, if not indeed the sole, purpose of [this] interrogation was to investigate a possible crime—which is, of course, precisely what the officer[s] *should* have done." *Davis, supra* at 2278. Accordingly, the victim's written statement and her oral statements to the police are inadmissible.[6]

### IV. HARMLESS ERROR

We cannot conclude that the error in this case was harmless. Because defendant failed to preserve his Confrontation Clause claim, we review the error under the standard for unpreserved constitutional error.

---

[4] See *Davis, supra* at 2279 (initial inquiries by police responding to a domestic dispute may produce nontestimonial statements in necessarily determining the parties involved and the threat to the safety of both the police and the victim).

[5] In its brief on remand, the prosecution essentially concedes that the written statement is testimonial under *Davis*.

[6] Although not directly at issue in our earlier opinion, testimony by the neighbor concerning the victim's oral statements after the 911 call must also be deemed testimonial and, thus, inadmissible.

*People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Defendant must show plain error that affected his substantial rights. *Id.* at 763; *People v Rodriguez*, 251 Mich App 10, 24; 650 NW2d 96 (2002).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [*Carines, supra* at 763, quoting *United States v Olano*, 507 US 725, 734, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (citations omitted).]

We cannot conclude that the improper admission of the victim's statement recorded by the neighbor and her statements to the police during their investigation was not outcome determinative.[7] Absent these statements, there is no evidence of defendant's beating the victim with the sticks or threatening her with the gun to support the charged offenses of felonious assault, MCL 750.82; possession of a firearm by a felon, MCL 750.224f; or possession of a firearm during the commission of a felony, MCL 750.227b. Under these circumstances, we find that the error seriously affected the fairness of the judicial proceedings, and defendant's

---

[7] The prosecution argues that defendant should nevertheless be denied relief on the basis of forfeiture by wrongdoing, *Davis, supra* at 2280; however, we find no basis for a forfeiture claim on the record before us.

convictions must be reversed. *Carines, supra* at 763. The key testimony in this case came from the neighbor and three police officers, all of whom repeatedly testified concerning the victim's statements to them, testimony that we have now determined to be inadmissible under *Davis*.[8]

However, given the limited record before us, we remand this case to the trial court to determine whether defendant is properly subject to a charge of any alternative or lesser-included offense, e.g., domestic assault, that may be pursued by the prosecution on the basis of the admissible evidence and the proceedings of record.[9]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

OWENS, J., concurred.

COOPER, J. (*concurring*). I agree with the majority's conclusion and scholarly analysis under *Davis* and *Hammon*.[1] However, because I disagree as to the application in part IV of *Carines* to this matter, I write separately to address that issue.

The majority concludes that "[b]ecause defendant failed to preserve his Confrontation Clause claim, we review the error under the standard for unpreserved constitutional error." *Ante* at 65, citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). I would

---

[8] Defendant was scheduled to testify, but he failed to appear on the final day of trial. The defense presented no testimony. Defendant was convicted in absentia.

[9] If the prosecution does not pursue this matter on remand to the trial court, further proceedings will be unnecessary.

[1] *Davis v Washington*, ___ US ___; 126 S Ct 2266; 165 L Ed 2d 224 (2006), which includes the companion case of *Hammon v Indiana*.

read *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), to automatically preserve Confrontation Clause claims. In *Crawford*, the defendant properly objected at trial to the admission of certain statements as hearsay. Justice Scalia, writing for the majority, turned the analysis to the Confrontation Clause, although the defendant had not preserved any such constitutional claim. I would find that *Crawford* sets the value of the Confrontation Clause guarantee high enough that violations of it cannot be unpreserved error.

Given the importance placed on the Confrontation Clause by Justice Scalia in *Crawford*, I am concerned that harmless error review is inappropriate. However, the Court did not directly speak to the applicable standard of review in *Crawford* or *Davis*, and we must therefore rely on existing Supreme Court precedent addressing the varied standards of review for constitutional errors. Here, because this error is not structural, but rather is "trial error," in that it "occurred during presentation of the case to the jury," we are bound to review it following the harmless error standard. *Arizona v Fulminante*, 499 US 279, 306-307; 111 S Ct 1246; 113 L Ed 2d 302 (1991). See also *Washington v Recuenco*, ___ US ___; 126 S Ct 2546, 2551; 165 L Ed 2d 466 (2006); *United States v Gonzalez-Lopez*, ___ US ___; 126 S Ct 2557, 2564; 165 L Ed 2d 409 (2006). I believe this is an issue the Supreme Court ought to address further; there is an apparent gap between the importance of the Confrontation Clause in *Crawford* and its consignment to harmless error review by the division between structural error and trial error.

However, in the instant case I agree with the majority; under any analysis, this error was not harmless.