*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

NATHAN WAYNE SHAW,

       Defendant-Appellant.

UNPUBLISHED
December 3, 2020

No. 347537
St. Clair Circuit Court
LC No. 18-001730-FH

Before: RONAYNE KRAUSE, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of operating a vehicle while intoxicated, third offense, MCL 257.625(1)(a), reckless driving, MCL 257.626, and operating a vehicle with a suspended, revoked, or denied license, second offense, MCL 257.904. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 2 to 7½ years for operating a motor vehicle while intoxicated, third offense, five days, time served, for reckless driving, and five days, time served, for operating a vehicle with a suspended, revoked, or denied license, second offense. Defendant argues on appeal that he is entitled to a new trial because his right to confrontation was violated when the prosecutor questioned him and Jonathan Smith about the statements made to the police by defendant's wife, Mercedes Shaw. Defendant argues, in the alternative, that he was denied the effective assistance of counsel because his trial counsel failed to object to the prosecutor's questions about Shaw's statements to the police. We affirm.

## I. FACTUAL BACKGROUND

On July 2, 2017, defendant and his family attended the Pickerel Festival in Algonac, Michigan. Defendant testified that throughout the day, he drank eight or nine 16-ounce beers and snorted cocaine. Before the fireworks show started, defendant laid down in his black truck because he drank too much and wanted to "sleep it off." Defendant's truck was parked at the corner of Robbins Street and State Street in Algonac. Corey Engel, Scott Pearson, and Jeannie Hilton were attending a barbeque at Engel's house located on State Street.

After the fireworks ended, Engle, Pearson, and Hilton, heard a truck "brake torqueing" and squealing tires. Engel, Pearson, and Hilton ran to the front of Engel's house and saw a bearded

man in a black truck parked at the corner of Robbins Street and State Street brake torqueing, revving his engine, and spinning his back tires. Engel and Pearson approached the driver's side window of the truck and Engel asked the driver what he was doing. The driver did not respond. Engel and Pearson put their arms into the truck to take the keys out of the ignition and the driver drove off with Engel and Pearson hanging off the side of the truck. Engel and Pearson let go of the truck after being dragged for two blocks. St. Clair County Sheriff's Deputy Dennis Tuzinowski pulled the truck over and defendant exited from the driver's door. Deputy Tuzinowski arrested defendant and defendant admitted that he did not have a valid driver's license, had a blood alcohol level of .078, and tested positive for cocaine and benzoylecgonine.

## II. RIGHT TO CONFRONTATION

Defendant argues that his constitutional right to confrontation was violated when the prosecutor questioned defendant and Smith about Shaw's statements to the police. We disagree.

To preserve a claim that a defendant's right to confrontation was violated, the defendant must object to the admission of the testimony in the trial court. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Defendant failed to object to the admission of the testimony regarding Shaw's statements to the police at trial. Therefore, the issue is unpreserved. *Id*. This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture, the defendant must demonstrate that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *People v Moorer*, 262 Mich App 64, 66-67; 683 NW2d 736 (2004).

A criminal defendant's right to confront the witnesses against him or her is guaranteed by both the United States Constitution and the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 20; *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). "To preserve this right, testimonial hearsay is inadmissible against a criminal defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant." *Garland*, 286 Mich App at 10, citing *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "However, if the hearsay is nontestimonial, the Confrontation Clause does not restrict state law from determining admissibility." *Id*.

"Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); See *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). "Statements are testimonial if the 'primary purpose' of the statements or the questioning that elicits them 'is to establish or prove past events potentially relevant to later criminal prosecution.'" *Garland*, 286 Mich App at 10, quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Statements to the police are nontestimonial " 'when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.' " *People v Walker*,

273 Mich App 56, 61; 728 NW2d 902 (2006), quoting *Davis*, 547 US at 822. Statements to the police are testimonial when " 'the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Id.*, quoting *Davis*, 547 US at 822.

Defendant challenges the prosecutor's line of questioning about the statements which Shaw made to the police when defendant was arrested. The prosecutor first questioned Smith about Shaw's statements, as follows:

> *Q.* . . . So later that night were you aware that [Shaw] gave a statement to the police?
>
> *A.* Um, not that I recall. A statement to the police at all. I mean, I know that the cops talked to both of us.
>
>                                 * * *
>
> *Q.* Are you aware that [Shaw] said she was driving around with you because she was mad at [defendant] for drinking and wanting to drive the car?
>
> *A.* She was with me, yes.
>
> *Q.* Okay. So she was driving around with you when you said you were kind of driving around –
>
> *A.* The block.
>
> *Q.* -- the block.
>
> *A.* Yep.
>
> *Q.* She was with you?
>
> *A.* We was trying to leave, yeah.
>
> *Q.* And it's true she was mad at [defendant]?
>
> *A.* Yes.
>
> *Q.* Because he was drinking?
>
> *A.* Um, yes.
>
> *Q.* And because he insisted on driving the truck, correct?
>
> *A.* Yeah, they were fighting, yeah.
>
> *Q.* She'd actually thrown the keys at him, correct?

*A.* Um, I don't know, I wasn't [watching] them fight. I just kind of learned to block them two out.

*Q.* It's true that she wasn't driving the truck. The truck got driven so she didn't have the keys, correct?

*A.* Um, she wasn't driving, no.

*Q.* Are you aware that [Shaw] told the police she saw [defendant] leave driving the truck northbound on State [Street]?

*A.* No, I'm not aware of that.

*Q.* She was in the car with you when she saw that, correct?

*A.* I didn't see him leave at all. I'm not aware if she seen him leave. I don't see how that's even possible because we left before that car had left. I, we were gone.

*Q.* Gone where?

*A.* Around the block. Maybe it was more like three or four blocks, but we were gone before that car or truck or moved. Before the truck moved we were gone. So maybe she's over thinking, you know, just like sometimes women do. I'm not meaning like that, but you, when you, you're mad, you know what I mean, you're fighting, you're upset, you're angry. She was over thinking maybe I don't know, but that – the truck did not move before we left.

*Q.* But it moved after?

*A.* Apparently, yes.

The prosecutor next questioned defendant on cross-examination about Shaw's statements, as follows:

*Q.* Do you know that [Shaw] gave a statement to police?

*A.* I don't know.

*Q*: You don't know?

*A.* No.

*Q.* You were made aware—we watched the footage and the officer told you that your wife had made a statement to [the] police saying she saw you driving.

*A.* Well my wife told me she did not make a statement.

* * *

-4-

*Q.* And if Deputy Carrie Duva[1] of the St. Clair County Sherriff's Department indicates that your wife did give a statement saying that she did see you driving and she was mad at you because you were drinking and insisted on driving the car you would say that's, you're saying that's a lie?

*A.* I don't know if she gave a statement or not. It's – I'm just going by what I was told.

\* \* \*

*Q.* Mere, [sic] if [Shaw] told Deputy Carrie Duva that she threw the keys at you when she was mad at you because you were insisting on driving would that be a lie?

*A.* I don't remember her throwing the keys at me, no.

The record demonstrates that Shaw spoke to the police after defendant's truck was stopped and defendant was arrested. The record is void of any continuing danger. Thus, Shaw was not speaking to the police to meet an ongoing emergency. Rather, Shaw's statements recounted the events which led to defendant's arrest. Thus, the primary purpose of Shaw's statements to the police was to establish or prove the events that led to defendant's arrest. Therefore, Shaw's statements were testimonial under the standard set forth in *Davis*.

The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross examine the witness. *Walker*, 273 Mich App at 60-61. Shaw did not appear at trial, defendant did not have a prior opportunity to cross-examine her, and there was no evidence presented that Shaw was unavailable to testify. The prosecution did not assert that Shaw invoked spousal immunity or that her statements were admissible under any hearsay exception.

On appeal, the prosecution argues that the questions regarding Shaw's statements to the police did not violate defendant's right to confrontation because the statements were not offered as substantive evidence, but rather, to attack defendant's credibility. The Confrontation Clause only applies to testimonial statements used as substantive evidence in a criminal prosecution. *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012) (quotation marks and citations omitted). The use of testimonial statements for the purpose of impeachment or to otherwise attack the credibility of a witness does not violate the Confrontation Clause. *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011); See also *Tennessee v Street*, 471 US 409, 413-414; 105 S Ct 2078; 85 L Ed 2d 425 (1985) (holding that evidence admitted for impeachment purposes does not violate the Confrontation Clause). Thus, the Confrontation Clause does not "bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015).

---

[1] Deputy Carrie Duva did not testify during the lower court proceeding.

We need not decide, however, whether the prosecutor properly used Shaw's statements to the police to impeach the credibility of defendant and Smith, rather than as substantive evidence, because defendant has failed to demonstrate that the alleged error affected his substantial rights. Defendant argues that the error affected the outcome of the proceeding because it undermined his defense that he was not driving the truck and made him look like a liar. We disagree.

While defendant denied that he was driving when his truck was pulled over, the evidence demonstrated that he was the driver of the truck. Hilton, Engel, Pearson, Deputy Tuzinowski, and St. Clair County Sheriff's Deputy Susan Westrick each testified that there was only one person in the truck. Deputy Tuzinowski and Deputy Westrick both testified that defendant exited the truck from the driver's seat when he was pulled over. Additionally, defendant informed St. Clair County Sheriff's Deputy Stoyan that he "had to get out of there" because "four or five guys" started "beating him up." When defendant was arrested, he had a blood alcohol level of .078, and tested positive for cocaine and benzoylecgonine. At trial, defendant admitted that he was intoxicated prior to his arrest and that, throughout the day, he snorted cocaine and consumed eight to nine, 16-ounce beers. Defendant, Smith, and Justin Breger each testified that defendant was sleeping in his truck prior to being arrested because he "had too much to drink." Furthermore, defendant admitted that he drove to the festival with a suspended license. Deputy Stoyan confirmed that defendant did not have a valid license in a database run by the Secretary of State. Additionally, the jury was instructed that the attorney's questions and arguments are not substantive evidence. Therefore, defendant is not entitled to a new trial because the testimony regarding Shaw's statements to the police did not affect the outcome of the proceeding and did not result in the conviction of an actually innocent defendant.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues, in the alternative, that he is entitled to a new trial because his trial counsel was ineffective for failing to object to the prosecutor's questions about Shaw's statements to the police. We disagree.

To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move in the trial court for a new trial or for a *Ginther* hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014); see *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Failure to move for a new trial or for a *Ginther* hearing limits this Court's review to mistakes that are apparent in the appellate record. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017) (citations omitted). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*. Defendant did not move in the trial court for a new trial or a *Ginther* hearing. Therefore, review is limited to the existing record. *Foster*, 319 Mich App at 390.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). This Court reviews questions of law de novo and a trial court's findings of fact for clear error. *Id*. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Thompson*, 314 Mich App 703, 720; 887 NW2d 650 (2016).

The effective assistance of counsel is presumed, and a defendant bears the burden to overcome the strong presumption that the assistance of his counsel was sound trial strategy. *People v Rosa*, 322 Mich App 726, 741; 913 NW2d 392 (2018); see also *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015) (citation omitted). To establish the ineffective assistance of counsel, a defendant must establish that " '(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different.' " *Rosa*, 322 Mich App at 74, quoting *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). However, counsel is not ineffective for failing to raise a meritless or futile objection. *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010).

While defendant's trial counsel failed to object to the prosecutor's questions about Shaw's statements to the police, counsel's performance was not below an objective standard of reasonableness. The decision not to object to the prosecutor's questioning regarding Shaw's statements was likely a strategic decision to avoid drawing undue attention to the testimony. Alternatively, defendant's trial counsel may have opted not to object to the statements because neither Smith nor defendant provided any detailed answer to the prosecutor's questions or indicated that they had any significant knowledge of Shaw's statements. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Additionally, as previously discussed, there is not a reasonable probability that the outcome of the proceeding would have been different had defendant's trial counsel objected to the line of questioning. Therefore, defendant failed to demonstrate that his trial counsel's performance was objectively unreasonable or that he was prejudiced by his counsel's failure to object to the prosecutor's questioning regarding Shaw's statements to the police.

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra