*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* NMH,

UNPUBLISHED
January 12, 2023

---

PEOPLE OF THE STATE OF MICHIGAN,

      Appellee,

v

NMH,

      Respondent-Appellant.

No. 355983
Calhoun Circuit Court
LC No. 2020-002015-PP

---

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

HOOD, J. (*concurring*.)

In the 2001 short story *Little Brother*, Walter Mosley imagined a future where courts are efficient because of advances in automation and video technology. The protagonist defends himself against an artificial intelligence prosecutor and before an automated judge because he cannot afford live, in-person proceedings. Although we presently are a long way from this imagined dystopia, the courts must remain vigilant against the gradual, frog-boiling dehumanization of the criminal judicial system—even in times of crisis.

This case presents another node along the path to that potential future. While I agree with the bulk of the analysis and conclusions in the majority opinion, I write separately because my agreement with the majority's handling of the third and fourth prong of plain-error analysis is premised on two conditions. First, we are bound by *People v Anderson*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 354860), app held in abeyance ___ Mich ___; 978 NW2d 835 (2022), which I believe was wrongly decided as it relates to prejudice and structural error arising out of video sentencing. Second, respondent has not argued that the apparent—and obvious—Confrontation Clause violations in this case prejudiced her or amount to structural errors that would place this case outside of *Anderson*'s framework. Because that argument is not presently before us, and because we are bound by *Anderson*, I agree with the majority.

## I. BACKGROUND

The majority opinion accurately describes the factual and procedural background of this case. Critically, this case involved indirect, criminal contempt proceedings for a personal protection order (PPO) violation. Because the contempt was criminal in nature, most if not all criminal procedural protections were required. The factfinder—in this case the trial court—viewed the entirety of the testimony via video. So did the respondent. The trial court never advised respondent of her rights under the Confrontation Clause to demand that the factfinder and the accused view the testimony in person.

## II. PRESERVATION AND STANDARD OF REVIEW

The majority opinion applies the correct standard of review: plain-error analysis. See *People v Carines*, 460 Mich 750, 763 n 7; 597 NW2d 130 (1999). Like the question of physical presence, the apparent Confrontation Clause violations are forfeit rather than intentionally waived. See *People v Davis*, 509 Mich 52, 64-65; ___ NW2d ___ (2022). Here, nothing in the record suggests that respondent knew she had a right to confront her accuser or have the trial court as the factfinder observe the testimony in person to more accurately assess witness credibility. We, therefore, would review the unpreserved Confrontation Clause issue for plain error if that issue were before us. See *id*.

As stated in the majority opinion, in order to obtain relief under the plain-error rule, a contemnor bears the burden of proving that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—in other words, the error affected the outcome of the proceedings. *Anderson*, ___ Mich App at ___; slip op at 4 (citation omitted). If a defendant satisfies these three requirements, the court must determine whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Carines*, 460 Mich at 763-764. This last step, sometimes identified as a fourth prong of plain-error analysis, conceptually overlaps with the third prong. *Davis*, 509 Mich at 75-76.

This standard also applies to the rare category of constitutional errors identified as "structural errors." *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Structural errors are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." See *Arizona v Fulminante*, 499 US 279, 309; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (holding that the use of coerced confession at trial was a structural error); *Weaver v Massachusetts*, ___ US ___; 137 S Ct 1899, 1907-1908; 198 L Ed 2d 420 (2017) (holding that the right to public trial is structural); *United States v Gonzalez-Lopez*, 548 US 140, 148-150; 126 S Ct 2557; 165 L Ed 2d 409 (2006) (holding that the Sixth Amendment right to counsel of one's choice is structural). Because their harm is extensive, intrinsic, and difficult to prove, "preserved structural errors result in automatic relief to the defendant to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Davis*, 509 Mich at 67 (quotation marks and citation omitted). Our Supreme Court recently explained that forfeited structural errors are also "particularly ill-suited to an analysis of whether the error affected the outcome of the trial court proceedings." *Id*. at 73. Therefore, "the existence of a forfeited structural error alone satisfies the third prong of the plain-error standard, and a defendant need not also show the occurrence of outcome-determinative prejudice." *Id*. at 74. In other words, a forfeited structural error automatically satisfies the third prong and creates a formal rebuttable presumption that a defendant has satisfied the fourth prongs. *Id*. at 73-75. The burden then shifts

-2-

to the prosecution to present facts that "affirmatively demonstrate that, despite the error, the overall fairness, integrity, and reputation of the trial court proceedings were preserved." *Id*. at 76.

## III. LAW AND ANALYSIS

I agree with the majority that respondent has satisfied the first and second prong of the plain-error analysis. My hesitation relates to the third-prong of plain-error analysis and consideration of whether plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence, the so-called fourth prong. I agree with the majority's conclusion that respondent has not satisfied the third prong, prejudice, because we are bound by the holding in *Anderson* and because respondent has not raised the Confrontation Clause violation as an issue in this appeal. I discuss both issues below.

### A. ANDERSON WAS INCORRECTLY DECIDED

First, the majority reaches the correct conclusion because we must follow this Court's prior holding in *Anderson*. See MCR 7.215(J)(1). But this Court's conclusion in *Anderson* was incorrect.[1] There, following a bench trial, the trial court sentenced the defendant via Zoom video conference. *Anderson*, ___ Mich App at ___; slip op at 2. Aside from the defendant not being present at sentencing and not being able to see his attorney during the hearing, the sentencing hearing complied with constitutional requirements. See *id*. at ___; slip op at 2. The defendant appealed, arguing in part, that he was entitled to resentencing because he was not physically present. *Id*. at ___; slip op at 4.

There, like here, the error was unpreserved. See *Anderson*, ___ Mich App at ___; slip op at 6. At the outset, this Court held that video sentencing was not a structural error because "(1) the right to be physically present at sentencing is designed to protect the defendant from an erroneous sentence, and not necessarily to protect some other interest, (2) the effects of sentencing a defendant remotely is not too difficult to measure, and (3) the error will not always result in fundamental unfairness." *Id*. at ___; slip op at 6, citing *Weaver*, 137 S Ct at 1908. In support of these conclusions, this Court cited *Weaver*, which did not involve video proceedings or sentencing at all. See *Anderson*, ___ Mich App at ___; slip op at 6; see also *Weaver*, 137 S Ct at 1908 (holding that closing the court room for two days of jury selection where all of the seats in the courtroom were occupied by the pool of prospective jurors did not violate the defendant's right to a public trial or satisfy the defendant's ineffective assistance of counsel claim).

Having concluded that the error was not structural, this Court also concluded that the defendant failed to satisfy the third and fourth prongs of the plain-error standard. *Anderson*, ___

---

[1] Notably, this Court held in a recent unpublished opinion that remote participation in sentencing was a structural error. *People v Harbenski*, unpublished per curiam opinion of the Court of Appeals, issued March 31, 2022 (Docket No. 356731), p 6 ("[W]e hold that the lack of in-person sentencing in this case was structural error that affected defendant's substantial rights and seriously affected the integrity and fairness of the judicial proceedings."). In *Anderson*, which was decided the same day as *Harbenski*, this Court held the opposite. See *Anderson*, ___ Mich App ___; slip op at 7 ("Defendant's remote participation in the sentencing was not a structural error.").

-3-

Mich App at ___; slip op at 6-8 & 8 n 4. First, this Court held that the defendant failed to show, or even argue, outcome-determinative prejudice. *Id*. at ___; slip op at 6-8. This Court reasoned that the plain-error standard required the defendant to "successfully establish that, had he been physically present in the courtroom, there is a reasonable probability that his sentence would have been different." *Id*. at ___; slip op at 6. The Court concluded that his physical absence from the courtroom still allowed him to participate (albeit without the ability to confer with his attorney) and did not restrict his ability to put in evidence or argument in favor of a low sentence. *Id*. at __; slip op at 7. In dictum, the Court stated that the effect of the error was not difficult to discern because "if it were necessary, all that would be required to determine whether defendant's physical presence impacted the sentence would be to remand for the trial court to indicate whether it did." *Id*. at ___; slip op at 7. In other words, the defendant did not prove that the remote proceedings resulted in a harsher sentence, and even if he had, this Court could remand to the sentencing court for the sentencing judge to say whether the outcome was prejudiced by video sentencing.

This is wrong for three reasons. First, it assumes that a sentencing judge who imposed a harsher sentence due to remote sentencing would be able to recognize that prejudicial effect of remote proceedings on remand. In reality, implicit prejudices in sentencing may be quantifiable, but hard—or impossible—for an individual trial judge to recognize. See *People v Heller*, 316 Mich App 314, 320-321; 891 NW2d 541 (2016) ("Abundant social science research demonstrates that video conferencing 'as a mediating technology' may color a viewer's assessment of a person's credibility, sincerity, and emotional depth.").[2] Second, the *Anderson* analysis calcifies a standard that a defendant can effectively never prove. There is no way to show that a video sentence affected the outcome, and even if there is a question, the trial judge can simply say it did not. Relying on the logic in *Anderson*, it is essentially impossible for a defendant to satisfy the third prong of the plain-error standard following a trial court's failure to advise a defendant of their right to be in person at various stages of trial, including sentencing. The difficulty in quantifying or proving prejudice related to such violations would seem to be an indication that either video sentencing is either never prejudicial or it is precisely the type of hard-to-measure error that reviewing courts should not have to quantify—structural. The simplest explanation is that remote sentencing without an appropriate waiver is an error that is intrinsic, pervasive, and impossible to measure. Precisely the sort of error that we should find is structural. This is the third reason *Anderson* is wrong. See *Heller*, 316 Mich App at 318-320 (discussing the "profound significance" of sentencing, acknowledging the "intensely personal nature of the process," and noting the "dehumanize[ation]" of that process associated with video sentencing.)

In reaching its conclusion that remote sentencing is not a structural error, this Court also acknowledged—but largely ignored—the principles outlined in *Heller*, 316 Mich App at 321. In *Heller*, this Court first recognized the constitutional right to in-person sentencing. Compare *Anderson*, ___ Mich App at___; slip op at 6 ("[T]he error will not always result in fundamental unfairness"), with *Heller*, 316 Mich App at 321 ("In our view, Heller's absence from the sentencing nullified the dignity of the proceedings and its participants, rendering it fundamentally

---

[2] This Court in *Heller* relied on the discussion of unintended, negative effects of videoconferencing in the legal world as stated in Salyzyn, *A New Lens: Reframing the Conversation about the Use of Video Conferencing in Civil Trials in Ontario*, 50 Osgoode Hall L J 429, 445 (2012).

unfair."). In *Heller*, however, this Court did not explicitly state that it was applying the plain-error standard or its prejudice prong, though the error in *Heller* appeared to be unpreserved. See *Heller*, 316 Mich App at 315, 321. Nonetheless, this Court strongly indicated that the lack of in-person sentencing for felony convictions was a structural error when it stated that sentencing via video conference renders the sentencing "fundamentally unfair." *Id*. Considering the statement in *Heller*'s extended discussion on the importance of in-person sentencing, this Court in *Anderson* should have concluded that sentencing via video conference without a valid waiver is structural, plain error.

The reasoning in *Heller* was sound. Sentencing in person is different than on Zoom. See *Anderson*, ___ Mich App at ___; slip op at 6. See also *Heller*, 316 Mich App at 319-321. On Zoom, a defendant appears to be one and half to three inches on a computer screen (or smaller if sentenced via video from the Michigan Department of Corrections). In person, the defendant stands between 6 feet and 25 feet from the judge. Unlike Zoom, in person, the judge cannot mute a defendant, victim, or member of the public who becomes overwhelmed during the sentencing hearing. On Zoom, there is no packing the courtroom with supporters, family, or victim advocates. There is no real interaction with the public outside of broadcasting proceedings to invisible masses on YouTube. And the trial judge cannot see the defendant or victim quake as they allocute. The Court in *Anderson* appeared to recognize these differences, see *Anderson*, ___ Mich App at ___; slip op at 6 ("Remote proceedings, despite the greatly improved and available technologies, simply do not compare to face-to-face interaction.")[3], and it ignored them, see *id*. at ___; slip op at 6-8.

Nonetheless, we are bound by *Anderson*. I, therefore, must agree with the majority's conclusion regarding the third and fourth prong of the plain-error analysis.

### B. CONFRONTATION CLAUSE VIOLATIONS

Finally, I agree with the majority's conclusions regarding the third and fourth prong of plain-error analysis because, aside from passing reference in respondent's brief, respondent has not raised the issue of the obvious Confrontation Clause violations in this case. This critical issue, therefore, is not presently before us. Had respondent raised the issue, we would be required to consider three questions: (1) whether the Confrontation Clause violations prejudiced respondent;

---

[3] The Court noted the critical importance of in-person sentencing, citing as examples *Heller* and several outer jurisdiction cases. See *Anderson*, Mich App at ___; slip op at 6, citing *Heller*, 316 Mich App at 319-320; *United States v Williams*, 641 F3d 758, 764 (CA 6, 2011) ("As our sister circuits have recognized, and anyone who has used video conferencing software is aware, 'virtual reality is rarely a substitute for actual presence.' ") (citation omitted); *United States v Lawrence*, 248 F3d 300, 304 (CA 4, 2001) (stating that Rule 43 of the Federal Rules of Criminal Procedure reflects the policy that "virtual reality is rarely a substitute for actual presence and that, even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it."); and *United States v Fagan*, 464 F Supp 3d 427, 429-430 (D Me, 2020) ("From thirty years of federal sentencing, I can attest to the importance of seeing the defendant in the same room at sentencing. Physical presence makes unavoidable the recognition that—in sentencing—one human being sits in judgment of another, with a dramatic impact on the future of a living, breathing person, not just a face on a screen.").

(2) whether they affected the fairness, integrity, and public reputation of the court proceedings; and (3) whether Confrontation Clause violations, like those in this case, are structural errors.

As stated above, this contempt was criminal in nature; therefore, respondent had the right to be present during critical stages of the proceedings. See *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987) (holding that criminal contempt requires most procedural safeguards of other criminal cases). But unlike *Anderson*, *Heller*, and the majority of cases analyzing the right to physical presence during criminal proceedings, this case also involved the court's denial of respondent's right to be present during adverse testimony and factfinding. This case, therefore, also implicates respondent's more specific Confrontation Clause rights (1) to see petitioner's testimony live in court and (2) to have the trial judge, as the factfinder, see his testimony live in court. See *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Jemison*, 505 Mich 352, 355-357; 952 NW2d 394 (2020); see also *In re Contempt of Dougherty*, 429 Mich at 91 (noting that criminal contempt requires most criminal procedures). The Sixth Amendment of the United States Constitution and Article 1, § 20 of the Michigan Constitution guarantee criminal defendants the right to confront the witnesses against them. See US Const, Am VI; Const 1964, art 1, § 20. A primary objective of the Confrontation Clause is to compel witnesses to "stand face to face with the [factfinder] in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *People v Buie*, 285 Mich App 401, 407-408; 775 NW2d 817 (2009), quoting *Mattox v United States*, 156 US 237, 242-243; 15 S Ct 337; 39 L Ed 409 (1895). The right to confrontation " 'is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' " *Buie*, 285 Mich App at 408, quoting *Barber v Page*, 390 US 719, 721; 88 S Ct 1318; 20 L Ed 2d 255 (1968). The Confrontation Clause has four elements: (1) physical presence, (2) an oath, (3) cross-examination, and (4) "observation of demeanor by the trier of fact . . . ." *Buie*, 285 Mich App at 408 (quotation marks and citations omitted). When combined, these elements ensure "that evidence admitted against an accused is reliable and subject to . . . rigorous adversarial testing . . . ." *Maryland v Craig*, 497 US 836, 846; 110 S Ct 3157; 111 L Ed 2d 666 (1990).[4]

Although reliability had long been a touchstone of Confrontation Clause jurisprudence, in *Crawford*, the United States Supreme Court established a bright-line rule requiring a face-to-face encounter for testimonial evidence. *Crawford*, 541 US at 61-63; see also *Jemison*, 505 Mich at 355-357 (reconciling *Crawford* with prior, narrower holding in *Craig*). *Crawford* requires face-to-face cross-examination for testimonial evidence unless a witness is unavailable and the defendant had a prior opportunity to cross-examine. *Jemison*, 505 Mich at 356, citing *Crawford*, 541 US at 68. Admitting a prosecution witness's video testimony over a defendant's objection necessarily violates a defendant's state and federal constitutional rights to confrontation. *Jemison*, 505 Mich at 356 (reversing conviction for first-degree criminal sexual conduct because

---

[4] Our Supreme Court has interpreted the holding in *Craig* as limited to its specific facts in order to reconcile that case with *Crawford*. See *Jemison*, 505 Mich at 355-357 (reconciling *Crawford* with prior, narrower holding in *Craig*).

prosecution's forensic expert witness's testimony via two-way video conference violated the Confrontation Clause).

Here, the trial court clearly erred by conducting the evidentiary hearing and sentencing via video without first advising respondent of her right to appear in person and making the appropriate waivers on the record. But the trial court also erred in allowing the prosecution to present testimony, including that of petitioner, without advising respondent of her Confrontation Clause rights. This error was as, if not more, obvious than the trial court's error in failing to advise respondent of her more general right to be physically present during proceedings that may adversely affect her rights.

The Supreme Court has also not yet held that a violation of the Confrontation Clause is a structural error. See *People v Walker*, 273 Mich App 56, 67-68; 728 NW2d 902 (2006) (COOPER, J., concurring) (noting a gap in Confrontation Clause precedent); but see *United States v Graham,* 278 F App'x 538, 545 n 2 (CA 6, 2008) (holding that admission of evidence in violation of the Confrontation Clause is not a structural error).[5] But the principles and directions outlined in *Crawford* and more recent Confrontation Clause precedent suggest that the Confrontation Clause violations in this case are precisely what structural error contemplates. See *Crawford*, 541 US at 61-62 ("[The Confrontation Clause's] ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.") (opinion by SCALIA, J.); *Jemison*, 505 Mich at 361-363 (analyzing preserved Confrontation Clause error and explaining that the Confrontation Clause "does not guarantee reliable evidence; it guarantees specific trial procedures that were thought to *assure* reliable evidence, undeniably among which was 'face-to-face' confrontation.") (Quotation marks and citation omitted; emphasis in original).

As indicated above, this Court has reached different conclusions regarding the effect and constitutional implications of criminal proceedings via video conference. Compare *Anderson*, ___ Mich App at ___; slip op at 7-8 (holding that the defendant satisfied the first two prongs of plain-error analysis but not the third), with *Heller*, 316 Mich App at 314 (holding sentencing via video was fundamentally unfair without explicitly citing the plain-error standard).[6] Our analysis,

---

[5] Although caselaw from lower federal courts is not binding precedent, it may be considered for its persuasive value. *People v DeRousse*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358358); slip op at 4.

[6] Unpublished cases from this court have also reached various outcomes. *Harbenski*, unpub op at 4-5 (holding that sentencing via video conference was a structural error; remanding for resentencing or waiver of right to in-person sentencing); *People v Harbenski*, unpublished per curiam opinion of the Court of Appeals, issued March 31, 2022 (Docket No. 356731) (BOONSTRA, J. concurring) (finding that video sentencing was plain error without structural error); *People v Enciso*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2020 (Docket No. 342965), pp 5-7, lv pending (holding that defendant sentenced via video conference satisfied

however, has almost exclusively been limited to the right to physical presence during sentencing, not physical presence during factfinding. See, e.g., *Heller*, 316 Mich App at 314 ; *Anderson*, ___ Mich App at ___; slip op at 7; *Harbenski*, unpub op at 3-6; see also *People v Enciso*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2020 (Docket No. 342965), pp 5-7, lv pending. Assessing prejudice in video sentencing can be particularly difficult, see *Anderson*, ___ Mich App at ___; slip op at 7-8, and does not implicate the same issues that are present with video testimony and video factfinding. I am unaware of cases assessing the resultant prejudice a defendant or criminal contemnor experiences when the court violates her right to be present during factfinding and testimony, absent prior misconduct or disruption by the defendant. I can only assume that is because such an error in criminal proceedings is exceptionally rare, and video testimony obviously requires knowing, intelligent, and voluntary waivers of rights under the Confrontation Clause. The same should be true in the context of criminal contempt proceedings.

If respondent had raised the issue, we would have to consider whether respondent has satisfied the third prong of plain error analysis because use of two-way videoconferencing for testimony affected her substantial rights. This Court and the United States Supreme Court have recognized that the right to confrontation allows an accused to confront their accusers, and allows the jury, or factfinder, to weigh a witness's credibility more accurately. *Buie*, 285 Mich App at 408 (noting that the right to confrontation is essential to a fair trial); *Craig*, 497 US at 846 (stating that the elements of the Confrontation Clause right to confrontation ensure that testimony against the accused is reliable and subject to rigorous adversarial testing). Without these elements, I am convinced that the trial court largely heard all of the testimony, but it is unclear if the trial court was in the same position to assess the credibility of either respondent or petitioner. By extension, the court, as the factfinder, was not in the same position it would otherwise be to determine respondent's guilt.

*Crawford* and *Jemison* suggest that these are questions that we should not have to answer because confrontation rights are intrinsic and pervasive, and their denial is impossible to measure. See *Crawford*, 541 US at 61-62; *Jemison*, 505 Mich at 355-357. The Confrontation Clause is not just about reliability; rather, it establishes bright-line procedures that define the fundamentals of criminal proceedings. See *Crawford*, 541 US at 61-62, 67-68; *Jemison*, 505 Mich at 355-357, 360-362. If asked, and if appropriately applying our Supreme Court's precedent and that of the United States Supreme Court, I would likely conclude that this sort of error is structural.

But without the Confrontation Clause problem, and being required to follow *Anderson*, it is difficult to say that the errors affected respondent's substantial rights. It is difficult to ignore that the trial court failed to ask if respondent consented to taking testimony and engaging in factfinding remotely. Without respondent's waiver, the court engaged in a process that almost certainly would not have occurred in an ordinary criminal context. Had it occurred in an ordinary criminal case, the need to reverse for waivers or retrial would be obvious. If this issue were before us, the outcome might have been equally obvious.

---

the first two prongs of plain-error analysis, but did not satisfy the third prong because his sentencing hearing otherwise complied with constitutional requirements and he could not demonstrate prejudice).

For these reasons, I respectfully concur in the result.



/s/ Noah P. Hood